UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| Lee Holt Judd, ) | |
| ) | |
| _____Debtor(s)._____ ) | Civil Action No. 6:11-00291-TMC |
| ) | |
| Robert F. Anderson, Trustee, ) | |
| ) | |
| Appellant, ) | **OPINION and ORDER** |
| ) | |
| vs. ) | |
| ) | |
| SUNTRUST MORTGAGE, INC., and ) | |
| EMC Mortgage Corporation, as ) | |
| Servicer for Citibank, N.A., as Trustee ) | |
| for Certificateholders of Bear Stearns ) | |
| Asset Backed Securities Trust ) | |
| 2007-SD-3, Asset Backed Securities ) | |
| Series 2007-SD3, ) | |
| ) | |
| Appellees. ) | |

## I.    INTRODUCTION

Robert F. Anderson (Trustee) filed this appeal of an Order of the Bankruptcy
Court granting judgment in favor of SunTrust Mortgage, Inc. (SunTrust), and EMC
Mortgage Corporation (EMC), hereinafter collectively referred to as "Lenders."  For the
reasons set forth herein, the court affirms the judgment of the Bankruptcy Court.

## II.    FACTUAL AND PROCEDUAL HISTORY

The underlying facts of this case are not in dispute.  Therefore, the court adopts
the undisputed factual findings of the Order of the Bankruptcy Court, which are
summarized herein.

This lawsuit began with the Trustee's efforts to recover real estate and the proceeds thereof.  The real estate in question was acquired by Lee Holt Judd ("Debtor") by Warranty Deed dated February 1, 2005.  The realty is described as Unit 603 of Mariner's Club, Lot 3, Block 6, Key Largo North, 97501 Overseas Highway, Key Largo, FL 33037 ("Unit 603").  The deed was recorded on or about March 3, 2005 in the Official Records of Monroe County, Florida, in Book 2090 at Page 957.[1]

Lenders claim an interest in Unit 603 and/or its proceeds.  At the time the Adversary Proceeding was filed in Bankruptcy Court, John T. Holt ("Debtor's father") also claimed an interest in that property.

On or about February 10, 2005, to finance the acquisition of Unit 603, the Debtor and Sarepta P. Wilson borrowed $744,800.00 from American Home Mortgage Acceptance, Inc., evidenced by a note and mortgage granting a lien on Unit 603.  The mortgage was recorded on March 3, 2005, at Book 2090 at Page 959.

On or about February 10, 2005, to further finance the acquisition of Unit 603, the Debtor and Wilson borrowed an additional $93,100.00 from American Home Mortgage, evidenced by a note and mortgage granting a lien on Unit 603.  That obligation was expressly subordinate to the mortgage above, and it was recorded on March 3, 2005, in Book 2090 at Page 983.

On or about March 24, 2005, the Debtor executed a Mortgage on Unit 603 to secure a note in the amount of $200,000.00 in favor of Lillian S. Maresch and a separate mortgage on Unit 603 to secure a note of $198,000.00 in favor of Van and Sarepta P. Wilson.  Both the Maresch and Wilson mortgages describe the collateral as

---

[1] All further references to the recording of documents shall indicate recordation in the Official Records of Monroe County, Florida.

"Unit 603 of MARINER'S CLUB as shown on the site plan attached as Exhibit 'B' to the Declaration of Covenants, Conditions and Restrictions for Mariner's Club recorded in Official Record Book 1659, Page 1982, more particularly described as Lot 4, Block 7, Key Largo North."  Both were recorded on November 2, 2005, in Book 2162 at Page 636 and Book 2162 at Page 640 respectively.[2]

On or about March 22, 2006, a Judgment in the amount of $475,962.18 was entered in favor of Marin Reed and Mary Reed against the Debtor.  The Judgment was recorded on March 30, 2006, in Book 2197 at Page 539 and on April 20, 2006, in Book 2202 at Page 1083.

On April 27, 2006, the Debtor executed a Warranty Deed conveying Unit 603 to Debtor's father.  Debtor's father financed the acquisition by, among other things, borrowing $910,000.00 from SunTrust, evidenced by a note and mortgage dated April 27, 2006, subsequently assigned to EMC (the "EMC Mortgage").  Debtor's father also borrowed an additional $260,000.00 from Defendant SunTrust, evidenced by a note and mortgage dated April 27, 2006 (the "SunTrust Mortgage").

Before the Debtor filed bankruptcy, Comprehensive Title Company collected the proceeds of the loans to Debtor's father from SunTrust Mortgage and EMC Mortgage that he used to finance the purchase of Unit 603 from the Debtor.

On May 4, 2006, at 3:55 P.M., Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of South Carolina.

---

[2] Unit 603 is actually Lot 3, Block 6, Key Largo North.  However, there is no dispute that, despite the discrepancy in the Lot and Block Numbers in the legal description of the property, the Maresch and Wilson mortgages constituted valid liens upon the subject property.

The Deed from the Debtor to Debtor's father, and his EMC Mortgage and SunTrust Mortgage had not been recorded at the time the bankruptcy case was filed. Although the loans from the EMC and SunTrust Mortgages had been funded, the proceeds of the sale of Unit 603 had not yet been fully disbursed to satisfy perfected encumbrances on the title and no releases or satisfactions had been filed.

On May 4, 2006, at 3:55 P.M., the date and time of the initiation of bankruptcy proceedings by Debtor in South Carolina, a review of the public property records in Florida would reveal that the Debtor owned Unit 603, and that the following appeared in the chain of title: the $744,800.00 Mortgage, the $93,100.00 Mortgage, and the $475,962.18 Judgment. The public records would also reflect the mortgages to Wilson and Maresch.

Also on May 4, 2006,[3] Comprehensive Title forwarded to Regent Bank's Wire Department a request to transfer funds from the loan to the Debtor's father (secured by the EMC Mortgage and the SunTrust Mortgage granted on Unit 603) to an account at BB&T, Greenville, South Carolina, on account of the Maresch Mortgage and the Wilson Mortgage and the funds were wired on that day as requested.

On May 5, 2006, Comprehensive Title forwarded to Regent's Banks Wire Department a request to transfer funds in the amount of $788,607.52 to an account at JP Morgan Chase to satisfy the $744,800.00 Mortgage given by the Debtor, and the funds were wired on that day as a result.

On May 5, 2006, Comprehensive Title Company forwarded to Regent Bank's Wire Department a request to transfer funds in the amount of $97,088.65 to an account

---

[3] The Bankruptcy Court, from the record provided, was unable to determine the time of any of the wire transfers.

at Chase Bank of Texas, N.A. to satisfy the $93,100.00 Mortgage given by the Debtor and the funds were wired on that day as a result.

On June 8, 2006, documents were recorded on the public record in Monroe County, Florida, in the following order at 1:06 P.M.: (a) 2006 Deed from Debtor to Debtor's father in Book 2215 at Page 203; (b) EMC Mortgage in Book 2215 at Page 205; (c) SunTrust Mortgage in Book 2215 at Page 229.

Also on June 8, 2006, the following documents were recorded, all also indicating that the time of recordation was 1:06 P.M.: (a) a Partial Release of Mortgage dated April 27, 2006 in Book 2215 at Page 253, releasing Unit 603 from the Maresch mortgage; (b) a Partial Release of Mortgage dated May 3, 2006 in Book 2215 at Page 254, releasing Unit 603 from the Wilson mortgage; (c) a Partial Release of Lien dated May 2, 2006 in Book 2215 at Page 202, releasing Unit 603 from the judgment.

On June 12, 2006, in Book 2215 at Page 2212, the Mortgage Release, Satisfaction and Discharge dated June 5, 2006, satisfying the $744,800.00 Mortgage was recorded.

On June 21, 2006, in Book 2218 at Page 394, the Satisfaction of Mortgage dated June 8, 2006, satisfying the $93,100.00 Mortgage was recorded. It is stipulated that neither EMC nor SunTrust had actual knowledge of the Debtor's bankruptcy petition filed in South Carolina before the foregoing transactions occurred.

Proof of the Debtor's filing of a bankruptcy petition in South Carolina was not filed in Florida until March 6, 2007, in Book 2277 at Page 388.

The bankruptcy case was converted to Chapter 7 on or about May 3, 2007. On January 29, 2008, the Trustee filed an adversary proceeding seeking recovery of money

and/or property under two separate theories of recovery from three different Defendants. The Complaint alleges that the deed to Debtor's father was a transfer made less than one year prior to the filing of the petition with the intent to hinder, delay and defraud creditors, and is thus a voidable and fraudulent transfer pursuant to 11 U.S.C. § 548 (labeled in the Complaint as Trustee's "First Cause of Action (John T. Holt)"). The Complaint further seeks recovery against all Defendants separately under § 544(a)(3) (labeled in the Complaint as Trustee's "Second Cause of Action (John T. Hold and SunTrust Mortgage, Inc."), alleging that the deed to Debtor's father, and the EMC Mortgage and the SunTrust Mortgage given by Debtor's father, were unrecorded at the time the bankruptcy case was filed. The Complaint asks for judgment against Debtor's father and separately against Defendants EMC and SunTrust by finding that their interests in Unit 603 are voidable by the Trustee pursuant to 11 U.S.C. § 544(a)(3) because at the time of the commencement of the bankruptcy case, the unrecorded deed to the Debtor's father and his mortgages to EMC and SunTrust were subordinate to the rights of a hypothetical bona fide purchaser of Unit 603.

On March 13, 2008, the Bankruptcy Court entered a default judgment in the adversary proceeding in favor of the Trustee against Debtor's father on the first and second causes of action. That judgment provided that "the Deed to John T. Holt as described in the Complaint is hereby declared void." This left only the remaining cause of action against Lenders brought pursuant to 11 U.S.C. § 544(a)(3).

The EMC Mortgage and the SunTrust Mortgage granted by Debtor's father relating to Unit 603 have not been satisfied and remain of record as filed.

On or about August 29, 2008, the Trustee, as owner of the Property, after entry of that default judgment, sold the Property for $417,500.00. This Bankruptcy Court's order approving the sale of Unit 603 free and clear of liens provided that:

> The liens of SunTrust and EMC shall attach to the net proceeds of the sale in the same manner as they were attached to the real property sold. The net proceeds of the sale shall be placed in a separate interest-bearing certificate of deposit and held by the Trustee pending resolution of Adversary Proceeding: 08-80012, Anderson v. Holt, et al. The Trustee shall not make any disbursements from the net proceeds without a further order from this Court.

The Trustee is currently holding $391,336.78 and Lenders claim that they are entitled to these funds as a result of the notes and mortgages granted by Debtor's father pre-petition and recorded, along with the deed from Debtor to Debtor's father, recorded post-petition. The amount owed by Debtor's father as a result of the loans evidenced by the EMC and/or SunTrust Mortgages exceeds the amount held by the Trustee. During the pendency of the adversarial proceedings in the Bankruptcy Court, Lenders and Trustee filed cross motions for summary judgment. The Trustee asserted that any interests these Defendants claim in the sale proceeds of Unit 603 are voidable under 11 U.S.C. § 544(a)(3) and requested summary judgment on these facts. EMC and SunTrust argued that as a matter of law, summary judgment in favor of the Trustee pursuant to § 544(a)(3)[4] is not warranted, and they instead asked the Bankruptcy Court for summary judgment on their defenses to the Trustee's § 544(a)(3) action, which include defenses found in § 550 and applicable law.

Trustee argued that Lenders' interest in the subject real property was subordinate to Trustee's interest by reason of § 544(a)(3) and Florida Sta. § 695.01(a).

---

[4] Further references to the United States Bankruptcy Code will be by Section Number only.

Lenders raised several defenses, among them, that Trustee's status as a hypothetical bona fide purchaser was defeated by Trustee's constructive notice of the SunTrust and EMC Mortgages by reason of the unsatisfied liens filed of record in Florida as of the date of the filing of the bankruptcy case.

The Bankruptcy Court granted summary judgment in favor of Lenders, holding that under Florida law, the existence of record of the unsatisfied liens provided notice to a subsequent purchaser (in this instance, the Trustee, as a hypothetical bona fide purchaser as provided by 11 U.S.C. § 544) which should cause such purchaser to "inquire to the point of finality about the status of the encumbrances of record and any related facts". (Dkt. No. 7-6, at 13). The Bankruptcy Court also ruled that "the Trustee's rights as a hypothetical bona fide purchaser of real property cannot exist when there are matters of record that put a purchaser on constructive notice that further inquiry is required." (Dkt. No. 7-6, at 10,11). The Bankruptcy Court determined that, as a matter of law, Trustee could not avail himself of the status of a bona fide purchaser by reason of the existence of the unsatisfied mortgage liens of record. In ruling that, under Florida law, such constructive notice prevented Trustee from using his strong-arm powers to avoid Lender's mortgage liens, the Bankruptcy Court did not reach the merits of the remaining arguments of the parties.

Trustee appealed the Bankruptcy Court's order to the United States District Court. By order dated August 10, 2010, United States Judge Henry F. Floyd reversed the order of the Bankruptcy Court, finding that the Florida courts had not yet adopted the constructive notice provisions of Georgia law relied upon by the Bankruptcy Court and as interpreted by the Court of Appeals of the Eleventh Circuit in *Gordon v.*

*NovaStar Mortgage, Inc. (In re Hedrick),* 524 F.3d 1175, 1183 (11th Cir. 2008), which cited *Rossville Fed. Sav. & Loan Ass'n v. Chase Manhattan Bank,* 154 S.E. 2d 243 (Ga. 1967) for the proposition that an unreleased lien of record places a purchaser of real property on notice, eliminating the possibility that a bona fide purchaser could take title to same free of the interests from the unreleased lien.  In holding that the grant of summary judgment in favor of Lenders was improper, the District Court directed that the case be remanded to the Bankruptcy Court to "consider the parties' other contentions in the first instance." (Case No. 6:09-cv-02540, Dkt. No. 18, at 9).

On remand, the Bankruptcy Court considered the remaining arguments of the parties in their respective motions for summary judgment.  The court denied Trustee's motion for summary judgment, rejecting the argument that Lenders must meet the requirements for equitable subrogation under both state law as well as Section 509 of the U.S. Bankruptcy Code.  The Bankruptcy Court concluded that Trustee could not avoid the mortgage liens of Lenders because under Florida law, the Trustee's status as a bona fide purchaser ("BFP") for value was subject to Lender's equitable subrogation claims under state law.  The Bankruptcy Court granted Lenders' Motions for Summary Judgment pursuant to the defenses set forth 11 U.S.C. §§ 550 (b) and (e), and denied Lenders' Motion for Summary Judgment on the defense of conventional subrogation. This appeal followed.  The court heard arguments on February 14, 2012.

### III.    STANDARD OF REVIEW

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 158 (a) and Federal Rule of Bankruptcy Procedure 8002.  The parties have jointly stipulated the underlying facts in this case.  Accordingly, this court reviews the Bankruptcy Court's

findings of law under a de novo standard of review. *Mason & Dixon Lines, Inc. v. First Nat'l Bank of Boston,* 86 B.R. 476 (M.D.N.C. 1988); *aff'd,* 883 F.2d (4th Cir. 1989).

Rule 56, Fed. R. Civ. P. applies in adversary proceedings in the Bankruptcy Court. Fed. R. Bankr. P. 7056. Summary judgment is appropriate only where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a). If the moving party sufficiently supports its motion for summary judgment, the nonmoving party must demonstrate "that there are genuine issues of material fact." *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

## IV. ISSUES PRESENTED

The parties agree that the following issues are presented for review by this court under the stipulated facts in this case:

1.   Whether the mortgages of real estate given to Lenders herein, which were not recorded at the time of the filing of bankruptcy proceedings, are good and effectual against the Trustee in Bankruptcy standing as a bona fide purchaser of real estate?[5]

2.   Whether Lenders are required to meet the requirements of § 509 of the Bankruptcy Code to subrogate to other claims against the Debtor?

3.   Whether Lenders have met the requirements for conventional subrogation?

4.   Whether Lenders have met the requirements for equitable subrogation?

5.   Whether Lenders are entitled to the protections of § 550 (b) of the Bankruptcy Code?

6.   Whether Lenders are entitled to the protections of § 550 (e) of the Bankruptcy Code?

---

[5] This question involves the ultimate issue in this case, and, as such, will be addressed in the conclusion section of this order.

7.     Whether this court should affirm the Bankruptcy Court's second Summary Judgment Order on the grounds therein?

8.     Whether this court should affirm the second Summary Judgment Order on the additional sustaining ground that the Bankruptcy Court erred in holding that Lender's mortgages were not entitled to conventional subrogation under Florida law?[6]

## V. DISCUSSION AND ANALYSIS

### A.     Are Lenders required to meet the requirements of § 509 of the Bankruptcy Code to subrogate to other claims against the Debtor?

Trustee argues that § 509 of the United States Bankruptcy Code alone controls the equitable subrogation claims of Lenders.

Section 509 provides as follows:

> (a) Except as provided in subsection (b) or (c) of this section, <u>an entity that is liable with the debtor</u> on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment (emphasis added).
>
> (b) Such entity is not subrogated to the rights of such creditor to the extent that—
>
>   (1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—
>
>     (A) allowed under section 502 of this title;
>
>     (B) disallowed other than under section 502 (e) of this title; or
>
>     (C) subordinated under section 510 of this title; or
>
>   (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

---

[6] Questions 3 and 8 are essentially the same.

> (c)  The court shall subordinate to the claim of a creditor
> and for the benefit of such creditor an allowed claim, by
> way of subrogation under this section, or for
> reimbursement or contribution, of an entity that is liable
> with the debtor on, or that has secured, such creditor's
> claim, until such creditor's claim is paid in full, either
> through payments under this title or otherwise.

Trustee contends that Lenders were not liable with Debtor on "a claim of a creditor against the debtor" because neither was liable with Debtor to the pre-existing lien holders and therefore cannot meet the requirements of § 509.  Trustee argues that § 509 controls the equitable subrogation claims of persons or entities who are not co-debtors, and that since the Bankruptcy Code has a detailed section regarding subrogation, the state law of subrogation is not applicable.

Lenders take the opposite view, adopted by the Bankruptcy Court in its order, that the language of § 509 and its title ("Claims of codebtors") indicate the provision is not applicable to the facts of this case.  Section 509 allows a co-obligor who pays, after the filing of the bankruptcy petition, a claim for which the debtor is primarily liable, to be subrogated to the rights of the creditor that the co-obligor has paid.  It is undisputed that here, Lenders were not co-obligors on the mortgages and judgment which had priority over Trustee as BFP.  Under the facts presented in this case, and in light of the available Fourth Circuit authority discussed more fully below, this court agrees with  the proposition that § 509 does not control the equitable subrogation claims of persons who are not co-debtors and does not pre-empt state law as it applies to the doctrine of equitable subrogation.

As noted by the Bankruptcy Court, Trustee cites cases from various jurisdictions supporting Trustee's position.   While arguably persuasive, these cases are not

controlling under the Eleventh Circuit or Florida state law. In *In re Celotex Corp.,* 472 F.3d 1318 (11th Cir. 2006) cited by Trustee and referenced in the order of the Bankruptcy Court, the court considered alternative claims for equitable subrogation under § 509 <u>as well as</u> Florida state law claims.

Another case cited by Trustee is *In re Fiesole Trading Co.,* 315 B.R. 198 (Bankr. D. Mass. 2004), which acknowledges a split of authority on this issue and notes that "[m]any courts have noted that the requirements of §509 are distinguishable from those of equitable subrogation, but have held or implied that either theory may provide a basis for subrogation in a bankruptcy case…." *Id. at 203*.

Additionally, this issue has been addressed by the Bankruptcy Court in this district. In *In re Houston*, 409 B.R. 799, 808 (Bankr. D.S.C. 2009), the court, citing *McAllister Towing v. Ambassador Factors (In Re Topgallant Lines, Inc.)* 154 B.R. 368, 382 (S.D. Ga. 1993), aff'd, 20 F.3d 1175 (11th Cir. 1994), held that the inclusion of subrogation under § 509 of the Bankruptcy Code does not preempt state subrogation law. The court found that:

> "[t]he majority and better rule is that both subrogation under § 509 and equitable subrogation under state law are available in bankruptcy proceedings. That the Bankruptcy Code codifies one type of subrogation should not stand as a bar to subrogation in other contexts, absent a clear congressional intent. This is especially so in an area such as property law, traditionally occupied by the states." 409 B.R. at 808.

The court finds that the Bankruptcy Court was correct in its ruling that Lenders are not required to meet the requirements for equitable subrogation under § 509 of the Bankruptcy Code.

**B.   Have Lenders met the requirements for Equitable Subrogation under Florida Law?**

Trustee asserts the status of a bona fide purchaser of real property without knowledge as of the commencement of the bankruptcy case pursuant to § 544(a)(3) of the United States Bankruptcy Code, which provides as follows:

> (a)    The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of the debtor or any obligation that is voidable by-
>
> . . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

The applicable Florida recording statute is set forth in Fla. Stat. § 695.01 (1), which provides as follows:

> (1)    No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; nor shall any such instrument made or executed by virtue of any power of attorney be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice unless the power of attorney be recorded before the accruing of the right of such creditor or subsequent purchaser.

Trustee contends that by reason of his status under §544(a)(3) as a bona fide purchaser, under the Florida recording statute, Trustee has priority over the mortgages of Lenders, which were not recorded until after Debtor filed her bankruptcy petition in South Carolina.

Lenders assert that the Florida recording statute is not the end of the inquiry, and that the cases cited by Trustee are not controlling under the facts of this case, because

none of them involved a subrogation fact pattern in which a loan was used to satisfy a perfected, pre-bankruptcy petition lien which was still of record and to which the lender could subrogate, such that Trustee relies, in essence, upon claims for equitable liens, *not* equitable subrogation.

The parties agree that a Trustee's interest in property is determined by 11 U.S.C. § 544(a)(3), which provides that a trustee enjoys the status of a bona fide purchaser without actual knowledge of any outstanding claim, lien or equity, without regard to the actual knowledge or notice of any actual creditor or trustee. *In re Chateau Royale,* 6 B.R. 8, 10 (Bank. N.D. Fla. 1980); *Crestar Bank v. Neal (In re Kitchin Equip. Co. of Virginia, Inc.)*, 960 F.2d 1242, 1245 (4th Cir. 1992). As noted above, Trustee argues that since the Bankruptcy Code has a detailed section regarding subrogation, the state law of subrogation is not applicable. However, the extent of a trustee's rights as a bona fide purchaser is a matter of state property law. *Am. Indus. Leasing Co. v. Searles (In re Ludlum Enters., Inc.),* 510 F.2d 996 (5th Cir. 1975). *See Havee v. Belk*, 775 F.2d 1209, 1218 (4th Cir. 1985) (holding that while 11 U.S.C. § 544 "gives the Trustee the status of a hypothetical lien creditor, the exercise of such power and its extent are governed entirely by state law"), (cited in *McCormick v. Macky*, 2012 WL 414667, at * 4. (4th Cir. 2012) (When determining whether a trustee can avoid a lien created before the bankruptcy petition is filed, his right to avoid is determined by whether, under state law, a bona fide purchaser of the property would have taken the property subject to the lien. If the bona fide purchaser would not have taken it subject to the lien, then neither would the Trustee.)). *See also Schlossberg v. Barney*, 380 F.3d 174 (4th Cir. 2004) (" A bankruptcy trustee…has the rights of a judicial lien creditor or bona fide purchaser, both

of which can only assert the rights granted them under state law").  For purposes of state law questions, the parties agree that Florida law governs this case.

In this case, it is undisputed that the deed from Debtor to her father and the purchase money mortgages executed by Debtor's father in favor of Lenders were not recorded in Florida until after the date Debtor filed her petition for bankruptcy in South Carolina.  There is also no dispute that the payments made by Lenders to the preexisting lienholders satisfied the entire debt on the subject property as shown by the release and satisfaction of all preexisting mortgages and the judgment lien.

A strict reading of Florida's recording statute would indicate that since Lender's mortgages were not filed of record at the time the bankruptcy petition was initiated, Trustee, assuming the position of a bona fide purchaser pursuant to § 544(a)(3), would prevail, taking priority over such mortgages.  While this may be an attractive analysis, it is not the end of the story.

A review of Florida case law reveals that the Florida appellate courts have recognized and applied the doctrine of equitable subrogation to allow a subsequent lender, who has satisfied an existing mortgage lien, to assume the priority position of such lien it has satisfied, notwithstanding the provisions of the Florida recording statute.

Equitable subrogation is a remedy in equity and its application has been debated in several Florida opinions.  Generally, subrogation is "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor. *Black's Law Dictionary* 1440 (7th ed. 1999).  *See also* A*urora Loan Servs., LLC v. Senchuk,* 36 So. 3d 716 (Fla. App. 1 Dist. 2010).

In *Fed. Land Bank of Columbia v. Godwin*, 145 So. 883 Fla. (1933), the Florida Supreme Court applied the doctrine of equitable subrogation to give priority to a new mortgage over an intervening lien placed on record after a first mortgage but prior to the mortgage at issue.  In *Godwin,* the Mortgagors executed a mortgage in favor of First National Bank of Perry on July 13, 1926.  Mortgagors executed a second mortgage to Alderman secured by the same real property on September 6, 1926.  On December 30, 1927, Mortgagors executed another mortgage to First National to secure the renewal of extension of the first mortgage and extension of additional sums.  On August 28, 1928, mortgagors executed another mortgage to the Federal Land Bank of Columbia, which subsequently brought suit to foreclose its mortgage.  Federal Land Bank of Columbia sought to subrogate its mortgage lien to that of First National Bank of Perry under the doctrine of equitable subrogation.  The court held that the mortgage of December 30, 1927, which was after the date of the mortgage given to Alderman, was given as a "renewal or extension" of the first mortgage given to First National Bank of Perry, giving it priority over the Alderman mortgage. 145 So. at 885.  The court acknowledged that the loan from Federal Land Bank of Columbia "would not have been made except for assurance" that it would constitute a valid first lien and stated that "[t]he rule is academic that one who makes a loan to discharge a first mortgage, pursuant to an agreement with the mortgagor that he shall have a first mortgage on the same lands to secure it, the lendor will be subrogated to the rights of the first mortgagee, notwithstanding there is at the time a second mortgage of which he (the lendor) is ignorant."  145 So. at 885.

In discussing the application of the doctrine of equitable subrogation, the Florida Supreme Court opined that the doctrine "does not arise from statute or custom, but is peculiarly a creation of equity, grounded on the proposition of doing justice to the parties without regard to form. It rests on the maxim that no one shall be enriched by another's loss, and may be invoked when and where justice demands its application." 145 So. at 885. The court went on to state that "[b]ottomed on this premise, it follows that under our system of jurisprudence *there is no limit to the circumstances that may arise in which this doctrine may be applied*." (emphasis added). Following this line of analysis, the Florida Supreme Court has continued to expand the liberal application of the doctrine of equitable subrogation.

In *Fed. Land Bank of Columbia v. Dekle,* 148 So. 756 (Fla. 1933), Federal Land Bank of Columbia provided funds for the payoff of a first mortgage with the intent of replacing same with its own mortgage which would constitute a first lien on real property owned by the mortgagor. The bank was unaware of a second mortgage to Dekle which had been recorded prior to its own. The Florida Supreme Court, citing *Godwin*, reversed the lower court which had issued a decree in favor of Dekle by granting her mortgage priority over that of the bank. In so doing, the court addressed its prior decision in *Boley v. Daniel*, 72 So. 644 (Fla. 1916), which had rejected the application of equitable and conventional subrogation to grant similar relief to a volunteer.

In *Brannon v. Hills*, 149 So. 556 (Fla. 1933), the Supreme Court of Florida again solidified the principle of equitable subrogation in Florida jurisprudence. In *Brannon*, the mortgagor obtained a loan from Brannon, secured by a mortgage. The proceeds of the loan were used to satisfy a first mortgage on real property. Brannon's mortgage was

later determined to be unenforceable because the mortgagor was married and had not obtained the consent of her spouse to mortgage the property, a violation of Florida law at the time. The court allowed Brannon to subrogate to the rights of the first mortgagee whose mortgage had been paid off by Brannon, thereby giving Brannon priority lien status over the subsequent mortgage. Citing *Godwin* and *Dekle*, the court held:

> [T]his court has definitely aligned itself with the prevailing rule now generally obtaining in the United States to the effect that one who loans money on a defective mortgage for the purpose of discharging a prior valid mortgage on the same property, where it is made to appear that the money is to be used for that purpose, is ordinarily entitled to subrogation to the rights of the prior mortgage.

The court went on to clarify that:

> The holding of <u>Boley v. Daniel, 72 Fla. 121, 72 So. 644, L. R. A. 1917A, 734,</u> has not been considered by us, in the two cases recently decided, as having been intended to announce a ruling contra. Boley v. Daniel, supra, related to payments by 'volunteers' pure and simple. In cases like those recently decided by us**,** as above stated, our holding has been that a person advancing money on an apparently good and sufficient new mortgage, to pay off an incumbrance which the money was being obtained to pay off, and which was used for the purpose, is not to be regarded as such a mere 'volunteer' as to preclude the right of subrogation, in cases where the new security given for the loan used to pay off the old incumbrance, turns out to be void after having been represented by the giver of it as being good at the time of its rendition. As has been well put in the able opinion of Mr. Justice Terrell in Federal Land Bank v. Godwin, supra, subrogation having been greatly expanded in this country as an equitable doctrine, 'may be employed to relieve from fraud or mistake' where it works no injustice to the rights of innocent third parties.

149 So. at 556, 557.

Florida's test for equitable subrogation has five parts. *See Dade Cnty. Sch. Bd.* v. R*adio Station WQBA,* 731 So. 2d 638, 646 (Fla. 1999). A discussion of these "tests" and their application to the facts of this case is appropriate.

First, the subrogee (Lenders herein) must have made the payment to protect his or her own interest.  This was done in this case, as the funds disbursed by Lenders to the preexisting lienholders paid off the entire debt on the subject property, as is shown by the satisfaction and/or release of record of all preexisting mortgages and the judgment lien.  The purpose was to give SunTrust a first lien on the subject property.  It is undisputed that SunTrust used the proceeds of its loans to pay off the American Home Mortgages, which held first and second priority lien status upon the subject real property at the time of the filing of the bankruptcy petition in South Carolina and to obtain releases of the property from the other liens.

Second, it must be shown that the subrogee did not act as a volunteer.  In arguing that under the facts of this case, Lenders occupy the status of a "volunteer," thereby precluding them from equitable subrogation, Trustee relies upon *Boley*.  This reliance is misplaced.  As previously noted, in *Brannon*, the Florida Supreme Court specifically addressed its prior opinion in *Boley* to specifically provide that a party who disburses funds to satisfy an existing mortgage of priority status and who receives a mortgage with the intent and purpose of taking the same priority status is not a "volunteer" and is equitably subrogated to the priority of the preexisting mortgage.

Third, it must be shown that the subrogee was not primarily liable on the debt.  There is no argument that Lenders, as third parties, were not liable on the prior mortgages which were satisfied from the loan proceeds secured by the mortgages given to Lenders.

Fourth, the subrogee must pay off the entire preexisting debt.  Again, in this instance, Lenders expended the entire proceeds of the loans given to the owner of the

property to pay off the existing first and second mortgage and to obtain a full and complete release of the property from the Maresch and Wilson mortgages as well as the judgment lien, which had attached to the property.

Finally, it must be shown that subrogation would not work any injustice on the rights of a third party. Trustee argues that application of the doctrine of equitable subrogation will prejudice his rights as a hypothetical bona fide purchaser because his interests will be subject to Lender's liens that were not of record at the time of commencement of the bankruptcy proceedings in South Carolina (i.e. the time of the hypothetical purchase). However, it is undisputed that at the time of the hypothetical purchase, the preexisting mortgages and judgment liens were of record and did have priority status over that of the BFP. As noted by Lenders in their brief, allowing subrogation does not prejudice Trustee's purchase rights or expectations; it merely changes the identity of the lienholders. Trustee is in the exact same position he would have been in had Lenders not made the loans to satisfy the prior liens. Accordingly, Trustee suffers no prejudice by allowing equitable subrogation in this instance.

To hold otherwise would result in a windfall in favor of the Trustee, who would enjoy the benefits of the satisfaction and release of the property from the four mortgages and judgment lien which had priority over his status as BFP but bear no responsibility for such liens. Under Florida law, the doctrine of equitable distribution is recognized as one "founded on established principles of equity to prevent an unjust forfeiture, on the one hand, and a windfall amounting to unjust enrichment on the other." *Radison Properties, Inc. v. Flamingo Groves, Inc.,* 767 So. 2d 587 (Fla. Dist. Ct. App. 2000).

Trustee also argues that Lender's negligence or lack of diligence in failing to timely record their mortgages precludes relief under equitable subrogation. However, in *Suntrust Bank v. Riverside Nat'l Bank of Florida*, 792 So. 2d 1222 (Fla. Dist. Ct. App. 2001), the Florida Fourth District Court of Appeal, citing *Godwin*, held that a bank's negligence in failing to discover the existence of a mortgage filed of record prior to bank's mortgage which was given in connection with a loan used to satisfy a first mortgage, would not preclude bank from the benefit of the doctrine of equitable subrogation. The court determined that "it is clear from the opinion of *Godwin* equitable subrogation will be applied to relieve negligence, where the position of the original junior lienors will be no worse than before the first mortgage was satisfied." 792 So. 2d at 1224, 1225.

In propounding the opposite view, Trustee cites to the case of *Picker Fin. Group, LLC v. Horizon Bank*, 293 B.R. 253 (M.D. Fla. 2003). In *Picker,* Borrower obtained a loan from American Bank secured by a UCC lien on certain property. Borrower subsequently obtained a second loan from Picker and gave him a second lien on the same property. Thereafter, Borrower obtained a third loan from Horizon Bank (Horizon) and gave Horizon a lien on the same property. Horizon had obtained a UCC search, which disclosed the existence of the Picker lien, but failed to review the search results prior to making the loan to Borrower and satisfying the lien of American Bank. The Bankruptcy Court concluded that under Florida law, Horizon was entitled to be equitably subrogated to the lien of American Bank pursuant to the doctrine of equitable subrogation.

On appeal, the United States District Court for the Middle District of Florida acknowledged that under Florida law, the principles of equitable subrogation apply to both real and personal property, but concluded that under *Boley*, Horizon was precluded from utilizing the doctrine due to its negligence in failing to review the results of the records search and because Horizon had constructive notice of Picker's intervening UCC lien. While the *Picker* court correctly noted that *Boley* had not been expressly overruled, it is the opinion of this court that to apply the *Picker* court's reading of *Boley* to the instant case would result in the misapplication of Florida law under the facts here for the following reasons.

The Florida Supreme Court, in *Boley*, did not utilize constructive notice to deny the application of the doctrine of equitable subrogation, but rather denied the lender the use of the doctrine because it determined he was, in essence, a volunteer. This remains the law in Florida. Further, as noted by Lenders in their brief, in *Boley,* the lender was denied the application of the doctrine of conventional, not equitable subrogation. *See Auora,* 36 So.3d 716 (holding that the court in *Picker* misread *Boley* and holding that record notice does not preclude equitable subrogation).

The *Auora* court, in addressing the opinion of the U. S. District Court in *Picker* noted that:

> "regardless of the *Picker* decision, the trial court was required to follow *Suntrust,* as it was a controlling decision of a district court in Florida. *Pardo v. State,* 596 So.2d 665, 666 (Fla.1992) (finding that in the absence of inter-district conflict or contrary precedent for the supreme court, the decision of a district court of appeal is binding throughout Florida); *see also Roland v. Fla. East Coast Ry., LLC,* 873 So.2d 1271, 1275 n. 5 (Fla. 3d DCA 2004) (holding the Florida appellate courts are not bound by federal precedent which is persuasive, not binding, authority) (citations omitted). As such, for these reasons, the trial court erred in granting summary judgment based on its interpretation of *Boley* as barring the

application of equitable subrogation where a refinancing lender had constructive notice of a second lien holder." 36 So. 3d at 720.

Under the stipulated facts of this case, it is undisputed that the four mortgages of record, as well as the judgment lien, had priority status as liens attaching to the subject real property superior to the interest of Trustee as hypothetical BFP at the time Debtor filed her bankruptcy petition. It is also undisputed that the loans made by Lenders and secured by the mortgages at issue in this case were made prior to the filing of the bankruptcy petition in South Carolina and that the proceeds of such loans were used to satisfy the American Home mortgages and to obtain a release of the subject real property from the other mortgages and the judgment lien. Hence, under the doctrine of equitable subrogation, as adopted by the Florida appellate courts, and as applied to the facts of this case, the position of the Trustee will be no worse than before such preexisting liens were satisfied.

Accordingly, this court finds that the Bankruptcy Court was correct in granting summary judgment in favor of Lenders on the issue of equitable subrogation.

**C. Are Lenders are entitled to the protections of §§ 550 (b) and (e) of the Bankruptcy Code?**

Trustee argues that the Bankruptcy Court erred in failing to grant summary judgment in his favor under Sections 550 (b) and (e).

**1. Section 550 (b)**

The Bankruptcy Code provides a trustee in bankruptcy certain "avoidance powers" which allow the trustee to set aside certain transactions entered into by the debtor prior to the filing of the bankruptcy petition. Section 550 (a) provides as follows:

(a)     Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544,545,547,548,549,553 (b), or 724 (a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from----

> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) the immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550 (a).  However, § 550 also places limitations upon a trustee's powers of recovery.  Section 550 (b) states that:

(b)     The Trustee may not recover under section (a) (2) of this section from----

> (1)   A transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith and without knowledge of the void-ability of the transfer avoided; or
>
> (2)   Any immediate or mediate good faith transferee of such transferee.  11 U.S.C. § 550 (b).

Accordingly, § 550 (b) provides a defense for a subsequent transferee who can meet the following three elements:  1) the transferee provided value in exchange for the transfer; 2) the transferee entered into the transaction in good faith; and 3) the transferee entered into the transaction without knowledge as to the void-ability of the avoided transfer.  SunTrust and EMC meet this test.  First, SunTrust made a loan to and secured a purchase money mortgage from Debtor's father for the purchase of the subject property.  SunTrust and EMC exchanged value in the assignment of the note and mortgage securing same.  As to the second prong of the test, SunTrust advanced funds for the purchase of the property, and there is no evidence that SunTrust or EMC

had any relationship with Debtor, the owner of the property, prior to the conveyance to Holt. There is no evidence of fraud or bad faith on the part of Lenders. Third, it is stipulated that neither SunTrust nor EMC had any actual knowledge of any pending bankruptcy proceeding involving Debtor. There is no indication that Lenders were aware of the void-ability of the transfer. Hence, Lenders satisfy the three requirements set forth in § 550(b).

Further, as noted by Lenders in their brief, Trustee does not dispute that Lenders satisfy the requirements of §§ 550 (b) or 550 (e) insofar as they require a showing that SunTrust gave value in good faith and without knowledge of the voidability of the transfer. Rather, Trustee argues that § 550 was not triggered because he never sought recovery of the property, citing the case of *Suhar v. Burns (In re Burns),* 322 F.3d 421 (6th Cir. 2003). However, unlike the situation in *Burns*, in this case, the subject real property was not "property of the estate" at the time of filing of the bankruptcy petition.

Debtor had already deeded the subject property to her father, Mr. Holt, prior to filing her bankruptcy petition. Additionally, SunTrust advanced funds to Debtor's father, Mr. Holt, for the purpose of purchasing the real estate in exchange for a mortgage on the property. SunTrust and EMC then exchanged value in the assignment of the note and mortgage securing same. There is no dispute that SunTrust and EMC received the transfer in good faith and no evidence in the record that they were aware of any defects in the transfer of the property from Debtor to Mr. Holt. SunTrust merely loaned funds to Holt for the purchase of the property. As the execution of the deed from Debtor to Holt, as well as the giving of the mortgage and assignment, took place a week before the

filing of the bankruptcy petition and approximately one year before notice of Debtor's bankruptcy proceedings was filed in the public records of Monroe County, Florida, Lenders were unaware of the bankruptcy proceeding at the time of the transfer and loan.

Trustee initiated an action to recover the property, which was accomplished, and the same was sold pursuant to an order of the Bankruptcy Court. The provisions of § 550 were therefore triggered.  Debtor's father, as grantee in the deed from Debtor, was the "initial transferee" described in § 550(a)(1); SunTrust was an "immediate transferee" of such initial transferee as described in § 550(a)(2), since the recordation of its mortgages could not take place until after the conveyance by Debtor to her father.

As noted by the Bankruptcy Judge in her opinion, it is not required that the value referenced in § 550(b) be reasonably equivalent value, but rather, it must be "consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value." *See Collier on Bankruptcy*, at ¶ 550.03 (1).  Whether one acts in good faith is determined by "whether the grantee knew or should have known that he was not trading normally but that on the contrary, the purpose of the trade, as far as the debtor was concerned, was the defrauding of his creditors."  *Id. at ¶ 550.03 (2).*

Trustee, in his supplemental brief, cites the cases of *In re Coleman*, 426 F.3d 719 (4th Cir. 2005), and In *re Nieves,* 648 F3d 232 (4th Cir. 2011), for the proposition that the defenses afforded by § 550 do not apply in this case.  In *Coleman*, a debtor in possession of property encumbered by two deeds of trust sought to avoid the deeds pursuant to § 544.  Thus, in *Coleman*, the debtor already owned the property, making

recovery of the same by the Trustee unnecessary after avoidance of the liens. Here, Debtor conveyed the real property to her father. Lenders financed this purchase, with the notes being secured by mortgages. The loan proceeds were disbursed to satisfy and obtain releases of several liens of record on the date of filing of the bankruptcy petition. The Trustee was therefore required to initiate recovery proceedings to return the property to the estate, which was accomplished through the filing of adversary proceedings, which called into play the § 550 defenses.

*Nieves* involved a situation whereby a lender, who held a mortgage on property which had been the subject of several fraudulent transfers, attempted to invoke the defenses set forth in § 550. The court determined that the lender had acted in bad faith by ignoring several problems in the chain of title as well as other issues which should have caused lender to stop and think prior to entering into the transaction. In that case, Nieves transferred the subject property to his brother for no consideration and thereafter filed for bankruptcy shortly thereafter. The brother then conveyed the property to an LLC owned by a friend of Nieves and himself by a deed which was not properly notarized. Further, the LLC was not a legal entity at the time, its charter having been forfeited to the state. The LLC thereafter obtained a loan from Capital City using the property as collateral utilizing a defectively executed deed of trust. Capital City did not request any financial information concerning the LLC prior to granting the loan, or obtain a credit report. Although Capital City did receive a certificate of good standing as to the LLC, it made no effort to obtain an updated certificate when the loan was made one month later. By this time, the LLC's charter had again expired.

When Capital City later attempted to invoke the defense set forth in § 550, the Bankruptcy Court found that while Capital City, as a mediate transferee, received the transfer from First Financial for value, it had failed to demonstrate good faith in entering the transaction because it disregarded open and obvious red flags surrounding the chain of title, such that any diligence on the part of the lender would have revealed numerous problems with the transaction. Here, the parties have stipulated that neither of the Lenders had actual knowledge of Debtor's bankruptcy Petition filed in South Carolina before their transaction took place.

### 2. Section 550 (e)

§ 550 (e) provides as follows:

(1)  A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—

(A)  the cost, to such transferee, of any improvements made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and

(B)  any increase in the value of such property as a result of such improvement, of the property transferred.

11 U.S.C. 550 (e) (1).

Lenders' mortgages improved the property within the meaning of § 550(e)(1). "Improvement" includes "payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee…" U.S.C. § 550(e)(2)(D). The proceeds of the Suntrust mortgages were utilized to improve the value of the property by satisfying the debt secured by the prior mortgages and judgment lien. Lenders satisfy the requirements of § §550(e)(1)(B) and 550(e)(2)(D) because the proceeds of the loan to

Debtor's father were used to satisfy the pre-petition liens on the subject real estate in Florida, which took priority over the rights of Trustee as a hypothetical BFP.

It is stipulated that Lenders disbursed funds from the loan to Debtor's father that satisfied the four mortgages that were recorded prior to the filing of the bankruptcy petition, as well as a judgment lien of record which attached to the subject property. In fact, the amount of the mortgage and judgment liens was greater than the value of the property. Accordingly, by obtaining satisfactions and releases of these pre-existing liens, Lenders improved the value of the property.

Accordingly, the Bankruptcy Court was correct in ruling that Lenders were entitled to summary judgment as to the defenses provided by §§ 550 (b) and (e).

**D.   Have Lenders met the requirements for conventional subrogation?**

The Bankruptcy Court denied Lenders' motion for summary judgment as to the defense of Conventional Subrogation. Having determined that the Bankruptcy Court was correct in granting summary judgment in favor of Lenders on the grounds set forth above, it is unnecessary for the court to address this issue.[7]

**VI.   CONCLUSION**

Lenders are entitled to the protections of §§ 550 (b) and (e) of the Bankruptcy Code. As Lenders were not co-obligors of the Debtor, Lenders are not required to meet the requirements of § 509 of the Bankruptcy Code. The mortgages and real estate given to Lenders herein, although not recorded at the time of the filing of the bankruptcy proceedings, are good and effectual against the Trustee in Bankruptcy standing as a

---

[7] Before the Bankruptcy Court, Trustee also asserted the provisions of 11 U.S.C. § 548 (c) regarding fraudulent transfers. However, Trustee abandoned this argument, which was not raised on appeal to this court.

bona fide purchaser of real estate, as Lenders meet the requirements for equitable subrogation under Florida law.

Wherefore, based on the foregoing discussion and analysis, it is the judgment of this court that the decision of the Bankruptcy Court be affirmed.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

March 29, 2012
Greenville, South Carolina